KENDALL BRILL & KLIEGER LLP
Robert N. Klieger (192962)
  *rklieger@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Defendant and
Counterclaimant Electronic Arts Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DIRECT TECHNOLOGIES, LLC, a California limited liability company,<br><br>       Plaintiff,<br><br>    v.<br><br>ELECTRONIC ARTS INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. SACV 10-01336 AG (PJWx)<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with Statement of Uncontroverted Facts and Conclusions of Law; Request for Judicial Notice; Declarations of Kerry Hopkins, Robert N. Klieger, and Gina Long; [Proposed] Judgment* |
| AND RELATED COUNTERCLAIM | Hon. Andrew J. Guilford<br><br>Date: February 24, 2014<br>Time: 10:00 a.m.<br>Crtrm.: 10D |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 24, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Andrew J. Guilford, located in the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, Defendant and Counterclaimant Electronic Arts Inc. ("EA") will and hereby does move this Court for summary judgment or, in the alternative, summary adjudication of each of the three claims for relief asserted by Plaintiff and Counterdefendant Direct Technologies, LLC ("DT") in its Second Amended Complaint.

This Motion is made upon the following grounds:

1.     DT's first claim for relief, for a declaratory judgment that it is a joint author of the USB drive in the shape of EA's famous PlumbBob icon that is the subject of this action (the "PlumbBob Drive"), fails as a matter of law for three independent reasons: (a) DT cannot establish that it made any independently copyrightable contribution to the PlumbBob Drive; (b) DT cannot establish that it satisfies any of the statutory criteria that must be satisfied in order to be deemed a co-author for purposes of the Copyright Act; and (c) even if DT could somehow establish that it was a co-author, DT assigned away its entire copyright interest in the PlumbBob Drive and therefore has no rights to assert.

2.     DT's second claim for relief, for an accounting, fails as a matter of law because it necessarily rests on DT having made the antecedent showing that it is a joint author under the Copyright Act.

3.     DT's third claim for relief, for alleged misappropriation of trade secrets, fails as a matter of law for at least five independent reasons: (a) the PlumbBob Drive samples, which DT claims as its purported trade secret, do not qualify for trade secret protection; (b) DT did not undertake adequate efforts to maintain the secrecy of those samples; (c) to the extent the samples constitute or embody any trade secrets, those trade secrets are owned by EA, not DT; (d) DT's

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

1

1  concession that EA owns at least one-half of the copyright in the PlumbBob Drive

2  means that EA was free to use or disclose the samples as it wished; and (e) DT has

3  adduced no evidence that EA acquired the samples by improper means or

4  subsequently disclosed them to anyone.

5       This Motion is made following the conference of counsel pursuant to L.R. 7-3

6  which took place on November 21, 2013.

7       This Motion is based on this Notice of Motion, the attached Memorandum of

8  Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of

9  Law filed concurrently herewith, the Request for Judicial Notice filed concurrently

10 herewith, the Declarations of Kerry Hopkins, Robert N. Klieger, and Gina Long

11 filed concurrently herewith, all of the pleadings, files, and records in this

12 proceeding, all other matters of which the Court may take judicial notice, and any

13 argument or evidence that may be presented to or considered by the Court prior to

14 its ruling.

15 Dated:  January 27, 2014                KENDALL BRILL & KLIEGER LLP

16

17                                         By:  /s/ Robert N. Klieger

18                                              Robert N. Klieger
                                                Attorneys for Defendant and
19                                              Counterclaimant Electronic Arts Inc.

20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ....................................................................................... 2

III.  SUMMARY JUDGMENT STANDARD ................................................. 5

IV.  ARGUMENT ........................................................................................... 6

    A.    EA Is Entitled To Summary Adjudication Of DT's First Claim
         For Relief, For Declaratory Judgment ..................................... 6

         1.    DT Did Not Make Any Independently Copyrightable
              Contribution To The PlumbBob Drive ......................... 6

         2.    Each Of The *Aalmuhammed* Factors Weighs Against A
              Finding Of Joint Authorship ......................................... 9

         3.    EA Is Entitled To Enforce DT's Assignment Of Any
              Copyright Interest In The PlumbBob Drive ............... 11

    B.    EA Is Entitled To Summary Adjudication Of DT's Second Claim
         For Relief, For An Accounting ............................................. 15

    C.    EA Is Entitled To Summary Adjudication Of DT's Third Claim
         For Relief, For Alleged Trade Secret Misappropriation ..................... 15

V.   CONCLUSION ....................................................................................... 18

**Kendall Brill
& Klieger LLP**

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*16 Cada Duse, LLC v. Merkin,*
   2013 WL 5510770 (S.D.N.Y. Sept. 27, 2013) ................................. 10

*Aalmuhammed v. Lee,*
   202 F.3d 1227 (9th Cir. 2000) .................................... 9, 10, 11

*Ahanchian v. Xenon Pictures, Inc.,*
   403 Fed. Appx. 166 (9th Cir. 2010) ................................ 11

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .................................................. 5, 6

*Ashton-Tate Corp. v. Ross,*
   916 F.2d 516 (9th Cir. 1990) ........................................... 6

*Cal Francisco Inv. Corp. v. Vrionis,*
   14 Cal. App. 3d 318 (1971) ............................................ 16

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H.,*
   510 F.3d 77 (1st Cir. 2007) ........................................... 15

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) .................................................. 5, 6

*Clark v. Bunker,*
   453 F.2d 1006 (9th Cir. 1972) ......................................... 16

*Durham Indus., Inc. v. Tomy Corp.,*
   630 F.2d 905 (2d Cir. 1980) .......................................... 7, 8

*Entm't Res. Grp,, Inc. v. Genesis Creative Grp., Inc.,*
   122 F.3d 1211 (9th Cir. 1997) ..................................... 7, 8, 9

*Far Out Prods., Inc. v. Oskar,*
   247 F.3d 986 (9th Cir. 2001) ........................................... 5

*Gallery House, Inc. v. Yi,*
   582 F. Supp. 1294 (N.D. Ill. 1984) ..................................... 7

*Griffin v. Williamson,*
   137 Cal. App. 2d 308 (1955) ........................................... 14

*Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.,*
   160 Cal. App. 2d 290 (1958) ........................................... 13

*Jules Jordan Video, Inc. v. 144942 Canada Inc.,*
   617 F.3d 1146 (9th Cir. 2010) ......................................... 12

*Malcomson v. Topps Co., Inc.,*
   2010 WL 383359 (D. Ariz. Jan. 29, 2010) ............................... 11

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

ii

*Maxwood Music Ltd. v. Malakian*,
    713 F. Supp. 2d 327 (S.D.N.Y. 2010) .............................................................. 11

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*,
    528 F.3d 1258 (10th Cir. 2008) ......................................................................... 7

*Past Pluto Prods. Corp. v. Dana*,
    627 F. Supp. 1435 (S.D.N.Y. 1986) ................................................................. 7

*Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*,
    65 Cal. App. 4th 1469 (1998) ............................................................. 13, 14, 15

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
    531 F.3d 962 (9th Cir. 2008) ................................................................ 6, 9, 10, 11

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) .............................................................................. 6

*Spinks v. Equity Res. Briarwood Apartments*,
    171 Cal. App. 4th 1004 (2009) ................................................................... 13, 14

*Sprengel v. Mohr*,
    2013 WL 645532 (C.D. Cal. Feb. 21, 2013) ................................................... 7

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998) ........................................................................ 9, 17

*VFD Consulting, Inc. v. 21st Servs.*,
    425 F. Supp. 2d 1037 (N.D. Cal. 2006) ......................................................... 16

*Walker v. University Books, Inc.*,
    602 F.2d 859 (9th Cir. 1979) .......................................................................... 16

Statutes

17 U.S.C. § 101 ........................................................................................................ 9

17 U.S.C. § 201 ...................................................................................................... 12

17 U.S.C. § 204 ...................................................................................................... 12

17 U.S.C. § 505 ...................................................................................................... 18

Cal. Civ. Code § 1691 ........................................................................................... 13

Cal. Civ. Code § 3426.1 ................................................................................... 15, 16

Cal. Civ. Code § 3426.4 ......................................................................................... 18

Rules

Fed. R. Civ. P. 56 .................................................................................................... 5

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant and Counterclaimant Electronic Arts Inc. ("EA") is a leading developer and publisher of video games.  Since 2000, EA has released a series of best-selling games entitled *The Sims*, in which players create and control simulated characters in a virtual world.  The "PlumbBob" is a 12-sided green diamond that identifies the character that is being controlled by the player and has long been an iconic symbol of *The Sims*.

In 2008, EA engaged Lithomania, Inc. ("Lithomania") to supply custom USB drives in the shape of the iconic PlumbBob (the "PlumbBob Drive").  Lithomania, in turn, engaged Plaintiff and Counterdefendant Direct Technologies, LLC ("DT") to produce prototype samples of the PlumbBob Drive.  DT assigned all of its rights in the PlumbBob Drive, including any copyright interest therein, to Lithomania, which in turn assigned those rights to EA.

Lithomania ultimately selected a different vendor to manufacture the PlumbBob Drives, prompting DT to commence an action against Lithomania in California state court.  In that action, DT alleged, *inter alia*, that the written agreements by which it had assigned all rights in the PlumbBob Drive to Lithomania had been procured by fraud, and DT sought rescission of those agreements.  DT eventually dismissed its claims with prejudice and entered into a settlement agreement, by which it waived and released its claims for fraud and rescission.

On September 7, 2010—the very same day DT's state court action was dismissed with prejudice—DT filed the instant action against EA, claiming for the first time that DT was a "co-author" of the PlumbBob Drive under the Copyright Act and is therefore entitled to one-half of any profits related to the drives.  DT subsequently amended its complaint to add a claim for alleged trade secret misappropriation, which is premised on EA's allegedly improper acquisition and disclosure of the prototype samples of the PlumbBob Drive created by DT.

1

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    DT's claims are without merit.  DT cannot establish that it made any

2    independently copyrightable contribution to the PlumbBob Drive or that it satisfies

3    even one of the three statutory criteria that must be met before a party can be

4    deemed a co-author for purposes of the Copyright Act.  Even if DT could somehow

5    establish that it was a co-author (which it cannot), the evidence is uncontroverted

6    that DT assigned away its entire interest in the PlumbBob Drive.  Further, DT lacks

7    a good faith basis for alleging even the existence of a trade secret under California

8    law, much less any actionable misappropriation by EA.

9         From the start, this case has been nothing more than a bad faith attempt to

10   extort an undeserved settlement from EA.  EA has been forced to incur hundreds of

11   thousands of dollars in attorneys' fees and costs defending against DT's meritless

12   claims.  There are no material factual disputes, and DT's claims are now ripe for

13   summary adjudication.  The Court should grant EA's motion and enter judgment in

14   its favor on each and every one of DT's claims for relief.

15   **II.    <u>BACKGROUND</u>**

16        *The Sims* is a strategic life simulation game published by EA.  Declaration of

17   Kerry Hopkins ("Hopkins Decl.") ¶ 2.  Players create virtual people called "Sims,"

18   customize the homes and neighborhoods in which they live, and help direct them in

19   their relationships, careers, and social lives as they progress through various life

20   stages.  *Id.*  EA has released three games in the franchise since 2000, along with

21   various expansion packs that have added additional "worlds" and other content to

22   the game play.  *Id.*

23        The "PlumbBob" is the name given to the green jewel that is used during

24   game play to identify the character being controlled by the player.  *Id.* ¶ 3.  The

25   PlumbBob is a hexagonal bipyramid, meaning it has 12 triangular faces comprised

26   of identical isosceles triangles.  *Id.*  EA holds a United States copyright registration

27   for the PlumbBob icon, U.S. Registration No. VA 1-735-172.  *Id.* ¶ 4.

28

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

2

1    In or about May 2008, EA requested that Lithomania, a print production

2 company and broker, source the manufacture of USB drives in the shape of the

3 PlumbBob (the "PlumbBob Drive").  Declaration of Gina Long ("Long Decl.") ¶ 4.

4 EA directed that the PlumbBob Drive be a three-dimensional version of the

5 translucent PlumbBob (pictured below) that EA had designed for its then-upcoming

6 release of *The Sims 3*:



13 *Id.*; Declaration of Robert N. Klieger ("Klieger Decl."), Ex. A (Transcript of

14 Deposition of Erik Jones ("Jones Tr.") 14:11-13, 109:19-23, 237:7-20).

15    Lithomania contacted Direct Technologies, Inc. ("DT"), a manufacturer of

16 custom USB drives, regarding EA's request.  *Id.* ¶ 5.  Lithomania provided DT the

17 image above, along with other two-dimensional renderings of the PlumbBob.  *Id.*

18 Lithomania asked DT to prepare drawings and, once approved by EA, create

19 prototype samples of a USB drive that was based upon EA's iconic PlumbBob, with

20 the same shape, proportions, color, and other material particulars.  *Id.*  EA retained

21 final decision-making authority with respect to all aspects of the PlumbBob Drive.

22 *Id.*; Klieger Decl., Ex. A (Jones Tr. 24:7-10, 103:14-17).

23    On or about August 26, 2008, Lithomania provided DT a copy of a Vendor

24 Agreement that DT, and any sub-vendors engaged by DT, were required to execute

25 in connection with the PlumbBob Drive project.  *Id.* ¶ 6.  DT did not communicate

26 any concerns or objections to any of the terms or conditions of the Vendor

27 Agreement.  *Id.*; Klieger Decl., Ex. A (Jones Tr. 213:22-214:2, 215:21-23, 222:18-

28 223:10).  DT eventually executed the Vendor Agreement, as well as the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

1   Confidentiality and Anti-Piracy Agreement attached as Appendix 3 thereto, in

2   which DT agreed that all rights in the PlumbBob Drives were owned by EA. *Id.* &

3   Exs. A–C.

4        The samples of the PlumbBob Drive supplied by DT (the final iteration of

5   which is pictured below) are instantly recognizable as a three-dimensional version

6   of EA's iconic PlumbBob, with a USB drive inserted in the core:

7

8

9

10 

11

12

13   *Id.* ¶ 7; Klieger Decl., Ex. A (Jones Tr. 237:7-20).  Lithomania paid DT several

14   thousand dollars in connection with its creation of the samples.  Long Decl. ¶ 8.  DT

15   never returned or offered to return those monies to Lithomania.  *Id.*; Klieger Decl.,

16   Ex. A (Jones Tr. 334:15-24).

17        Lithomania ultimately sourced the manufacture of the PlumbBob Drives from

18   Trek 2000 International Ltd. ("Trek 2000"), which, unlike DT, was licensed to use

19   the USB drive technology that EA required for the PlumbBob Drives.  Long Decl.

20   ¶ 9.  EA distributed the PlumbBob Drives as part of the Collector's Edition of *The*

21   *Sims 3*, which EA released in June 2009.  Hopkins Decl. ¶ 6.

22        DT sued Lithomania in San Mateo County Superior Court in September 2009,

23   alleging that Lithomania had fraudulently misrepresented its intent to purchase the

24   PlumbBob Drives from DT and seeking rescission of the Vendor and

25   Confidentiality and Anti-Piracy Agreements.  Request for Judicial Notice ("RJN"),

26   Ex. A.  Lithomania and DT entered into a Settlement Agreement and Release dated

27   as of August 23, 2010, and the action was dismissed with prejudice.  Long Decl.

28   ¶ 10 & Ex. D; RJN, Ex. C.  Lithomania has never agreed to terminate or rescind the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

4

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

1  Vendor and Confidentiality and Anti-Piracy Agreements.  Declaration of Amanda

2  Riddle ("Riddle Decl.") ¶ 3; Klieger Decl., Ex. A (Jones Tr. 274:14-275:4, 277:5-9).

3  To the contrary, Lithomania specifically rejected DT's request that Lithomania

4  agree to terminate those agreements.  Riddle Decl. ¶ 3 & Ex. A.

5      DT filed this action against EA in September 2010, seeking a declaration that

6  DT is a "joint author" of the PlumbBob Drives under the Copyright Act and is

7  therefore entitled to one-half of any profits related to those drives.  DT had never

8  before communicated to Lithomania, EA, or anyone else DT's purported belief that

9  it owns a copyright interest in the PlumbBob Drives.  Hopkins Decl. ¶ 6; Klieger

10  Decl., Ex. A (Jones Tr. 261:21-263:23); Long Decl. ¶ 11.  Had DT made its claim

11  known to EA in the fall of 2008, EA would not have approved the PlumbBob Drives

12  for manufacture, and would not have distributed the drives as part of the Collector's

13  Edition of *The Sims 3*, without first obtaining a declaration that DT held no such

14  interest or otherwise resolving the claim to its satisfaction.  Hopkins Decl. ¶ 6.

15  ## III.   SUMMARY JUDGMENT STANDARD

16      Rule 56 requires summary judgment to be granted when "the movant shows

17  that there is no genuine dispute as to any material fact and the movant is entitled to

18  judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby,*

19  *Inc.,* 477 U.S. 242, 247–248 (1986).  Material facts are those that affect the outcome

20  of the case.  *Anderson,* 477 U.S. at 248; *Far Out Prods., Inc. v. Oskar,* 247 F.3d

21  986, 992 (9th Cir. 2001).  A dispute about a material fact is "genuine" only if "the

22  evidence is such that a reasonable jury could return a verdict for the nonmoving

23  party."  *Anderson,* 477 U.S. at 248.

24      The moving party bears the initial burden of establishing the absence of a

25  genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323

26  (1986).  As to an issue for which the opposing party has the burden of proof, the

27  movant "can prevail merely by pointing out that there is an absence of evidence to

28  support the nonmoving party's case."  *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

5

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

978, 984 (9th Cir. 2007); *Celotex,* 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case.").

Once the moving party presents sufficient evidence or argument to support the motion, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. *Id.* at 324. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. The nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257.

## IV.   ARGUMENT

### A.   EA Is Entitled To Summary Adjudication Of DT's First Claim For Relief, For Declaratory Judgment

DT's first claim for relief seeks a declaration that DT is a "joint author" of the PlumbBob Drive. Second Amended Complaint ("SAC") ¶¶ 31-34. To prevail on this claim, DT is required to prove that it: (1) made an independently copyrightable contribution to the PlumbBob Drive; and (2) satisfies the statutory criteria that must be met in order to be deemed a co-author for purposes of the Copyright Act. *See Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 967-68 (9th Cir. 2008). DT cannot make either showing as a matter of law. Even if DT could somehow establish that it was a co-author of the PlumbBob Drive, DT assigned away its entire interest in the PlumbBob Drive and therefore has no rights to assert.

#### 1.   DT Did Not Make Any Independently Copyrightable Contribution To The PlumbBob Drive

"[J]oint authorship requires each author to make an independently copyrightable contribution." *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990). The adaptation of an existing work to a new medium does not constitute a

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  copyrightable effort for purposes of the Copyright Act.  *See Entm't Res. Grp,, Inc. v.*
2  *Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) (hereinafter "*ERG*").
3  Thus, one who simply converts a two-dimensional design into a three-dimensional
4  object does not acquire any rights as a co-author.  *Id.*; *see, e.g.*, *Durham Indus., Inc.*
5  *v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Past Pluto Prods. Corp. v. Dana*,
6  627 F. Supp. 1435, 1441 (S.D.N.Y. 1986); *Gallery House, Inc. v. Yi*, 582 F. Supp.
7  1294, 1297 (N.D. Ill. 1984).

8          DT did not contribute any independently copyrightable expression to the
9  PlumbBob Drive.  Indeed, the PlumbBob Drive is not copyrightable at all, but is
10 instead simply a three-dimensional embodiment of a pre-existing work—*i.e.*, EA's
11 famous PlumbBob icon.  DT concedes that the PlumbBob is an iconic symbol of
12 *The Sims* franchise.  Klieger Decl., Ex. A (Jones Tr. 84:21-25).  DT further concedes
13 that it was requested to create, and that it did create, the PlumbBob Drive as a three-
14 dimensional version of the PlumbBob.  *Id.* (Jones Tr. 14:11-13, 109:19-23, 237:7-
15 20).  Although DT purports to have invested substantial labor and resources in the
16 conversion of EA's two-dimensional design into a three-dimensional object, those
17 efforts did not vest DT with any copyright interest based upon the absence of any
18 independently copyrightable expression.  *Sprengel v. Mohr*, 2013 WL 645532, at
19 *14 (C.D. Cal. Feb. 21, 2013); *see Meshwerks, Inc. v. Toyota Motor Sales U.S.A.,*
20 *Inc.*, 528 F.3d 1258, 1268 (10th Cir. 2008) ("[I]n assessing the originality of a work
21 for which copyright protection is sought, we look only at the final *product*, not the
22 process, and the fact that intensive, skillful, and even creative labor is invested in the
23 process of creating a product does not guaranty its copyrightability.") (emphasis in
24 original).

25          The Ninth Circuit's decision in *ERG, supra*, is particularly instructive.  The
26 plaintiff in that case, ERG, claimed to own a copyright in three-dimensional
27 inflatable costumes that it designed and manufactured based on two-dimensional
28 cartoon characters.  *ERG*, 122 F.3d at 1216.  The district court entered summary

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

judgment against ERG on the ground that ERG did not possess a valid copyright in the costumes, and the Ninth Circuit affirmed.  *Id.* at 1216, 1224.  Although the Ninth Circuit recognized that ERG had "placed a lot of thought and effort into figuring out how to transform the two-dimensional copyrighted characters into three-dimensional inflatable costumes," that did not make the costumes sufficiently original to qualify for copyright protection.  *Id.* at 1222; *see id.* ("making decisions that enable one to reproduce or transform an already existing work into another medium or dimension—though perhaps quite difficult and intricate decisions—is not enough to constitute the contribution of something 'recognizably his own'").  Importantly, the Ninth Circuit rejected copyrightability as a matter of law notwithstanding the fact that ERG's costumes had at least one "truly 'artistic' difference" from the two-dimensional characters, in the form of original facial expressions.  *Id.* at 1223.  That admittedly artistic contribution did not constitute an independently copyrightable contribution given that "no reasonable trier of fact would see anything but the underlying copyrighted character when looking at ERG's costumes."  *Id.*  "In other words, because ERG's costumes are 'instantly identifiable as embodiments' of the underlying copyrighted characters in 'yet another form,' no reasonable juror could conclude that there are any 'non-trivial' artistic differences between the underlying cartoon characters and the immediately recognizable costumes that ERG has designed and manufactured."  *Id.* (quoting *Durham Indus.*, 630 F.2d at 908-09).

 *ERG* is controlling here.  The PlumbBob Drive is a three-dimensional embodiment of EA's iconic PlumbBob, and DT concedes that it is instantly recognizable as such.  Klieger Decl., Ex. A (Jones Tr. 237:7-20) ("Q. Do you think to somebody who's familiar with .. the Sims games … that the final end product is instantly recognizable to a consumer as a 3D version of the PlumbBob? … THE WITNESS: Well, our goal was to design it to look like it. … And I think we did.").  Like the plaintiff in *ERG*, DT cannot identify any non-trivial artistic differences between EA's PlumbBob icon and the PlumbBob Drive.  Indeed, DT cannot identify

1    any artistic differences at all.  Rather, DT created a three-dimensional version of the

2    PlumbBob that was identical to the original in shape, proportions, color, and all

3    other material particulars.  The only differences in appearance between the

4    PlumbBob Drive and the iconic PlumbBob upon which it is based derive from the

5    fact that the PlumbBob Drive is a useful article having a USB drive at its core.

6    Those differences "are driven primarily by a functional, utilitarian or mechanical

7    purpose" and therefore "cannot be considered when seeking artistic differences for

8    the purpose of originality."  *ERG*, 122 F.3d at 1221.

9          Because no reasonable trier of fact could find that DT made any

10   independently copyrightable contribution to the PlumbBob Drive, DT's first claim

11   for relief fails as a matter of law.

12             **2.      Each Of The *Aalmuhammed* Factors Weighs Against A**

13                       **Finding Of Joint Authorship**

14         Even if DT could demonstrate that it made an independently copyrightable

15   contribution to the PlumbBob Drive (which it cannot), its joint authorship claim

16   would still fail as a matter of law.  In *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir.

17   2000), the Ninth Circuit set forth three criteria for determining whether a work is

18   jointly authored for purposes of 17 U.S.C. § 101, all of which weigh heavily against

19   DT's claim of joint authorship.

20         The first *Aalmuhammed* factor looks to whether the "putative co-authors

21   ma[de] objective manifestations of a shared intent to be coauthors."  *Id.* at 1234; *see*

22   *Thomson v. Larson*, 147 F.3d 195, 201 (2d Cir. 1998) ("[S]ince coauthors are

23   afforded equal rights in the co-authored work, the 'equal sharing of rights should be

24   reserved for relationships in which all participants *fully intend to be joint authors*.'")

25   (emphasis added).  "A contract evidencing intent to be or not to be coauthors is

26   dispositive."  *Richlin*, 531 F.3d at 968.  Here, the Vendor Agreement executed by

27   DT evidences a shared intent that DT and EA *not* to be considered co-authors.  DT

28   expressly acknowledged that "[a]s between Lithomania, EA, and [DT], EA owns all

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

9

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

1   rights in and to the EA Intellectual Property, any and all modifications,

2   enhancements, and derivative works of the [PlumbBob]."  Long Decl., Ex. A (¶

3   2.3).  This alone defeats a claim of joint authorship.  *Richlin*, 531 F.3d at 968.

4        DT attempts to avoid this result by arguing that Lithomania induced it to sign

5   the Vendor Agreement through allegedly false representations, and that the

6   agreement therefore cannot be enforced.  DT, however, never objected to the terms

7   of the Vendor Agreement and concedes that it was prepared to execute the Vendor

8   Agreement *before* Lithomania made its allegedly false representations.  Klieger

9   Decl., Ex. A (Jones Tr. 213:22-214:2, 215:21-23, 222:18-223:10).  Thus, regardless

10  of whether the Vendor Agreement is enforceable (or even if it had never been signed

11  at all), DT's acceptance of its terms demonstrates a shared intent that EA own any

12  and all rights in the PlumbBob Drives.  *See, e.g.*, *16 Cada Duse, LLC v. Merkin*,

13  2013 WL 5510770, at *8 (S.D.N.Y. Sept. 27, 2013) ("[A]s there is no evidence that

14  Merkin ever objected to the substantive terms of the agreement, there is no reason to

15  believe that the lack of a signed agreement changed Plaintiffs intention.").[1]

16       The second and "most important" *Aalmuhammed* factor—ultimate control

17  over the subject work—also weighs heavily against a finding of joint authorship.

18  *Richlin*, 531 F.3d at 968.  "Where one party retains the right to make final decisions

19  regarding the content of the work, that right weighs in favor of finding that the party

20  did not intend to be a joint author."  *Maxwood Music Ltd. v. Malakian*, 713 F. Supp.

21

22       [1] Separate and apart from the Vendor Agreement, there was no manifestation
23  of a shared intent to be co-authors.  DT was fully aware of EA's belief that it would
    own all rights in the design of the PlumbBob Drives.  Klieger Decl., Ex. A (Jones
24  Tr. 207:20-208:2).  Yet, DT did not indicate to anyone before filing this litigation
25  that DT intended to be a co-author.  Hopkins Decl. ¶ 6; Long Decl. ¶ 11; Klieger
    Decl., Ex. A (Jones Tr. 205:22-206:2); *see Aalmuhammed*, 202 F.3d at 1235
26  (finding no joint authorship where "[n]o one, including [the purported co-author],
    made any indication to anyone prior to the litigation that [he] was intended to be a
27  co-author and co-owner").

28

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2d 327, 345 (S.D.N.Y. 2010); *see Aalmuhammed*, 202 F.3d at 1235 ("absence of control is strong evidence of the absence of co-authorship").  It is undisputed that EA had ultimate control and final decision-making authority over the design of the PlumbBob Drives.  Klieger Decl., Ex. A (Jones Tr. 24:7-10) ("Q. Did you understand that EA would have ultimate approval over the product that Direct Technologies was designing?  A. We understood that."); *Id.* (Jones Tr. 103:14-17) (Q. … And Electronic Arts, as the end customer, would have final decision-making authority.  Correct?  A. That was my understanding.").  In the absence of ultimate control, DT's contributions, no matter how substantial, were "not enough for co-authorship of a joint work."  *Aalmuhammed*, 202 F.3d at 1235.

The third *Aalmuhammed* factor examines whether the "audience appeal of the work" derives equally from the copyrightable contributions of each of the putative co-authors.  *Id.* at 1234.  Even if DT were found to have made some independently copyrightable contribution to the PlumbBob Drive (which, as discussed above, it did not), that contribution would be miniscule in comparison to the PlumbBob itself and would contribute little if anything to the consumer appeal of the drives.  *See Ahanchian v. Xenon Pictures, Inc.*, 403 Fed. Appx. 166, 169 (9th Cir. 2010); *Malcomson v. Topps Co., Inc.*, 2010 WL 383359, at *7 (D. Ariz. Jan. 29, 2010).  Accordingly, the third *Aalmuhammed* factor also weighs heavily in favor of EA.

The Ninth Circuit has rejected claims of joint authorship as a matter of law where even just the first two *Aalmuhammed* factors weigh in favor of one party.  *Richlin*, 531 F.3d at 970.  Here, all three *Aalmuhammed*  factors weigh heavily in favor of EA, and EA is entitled to summary adjudication of DT's first claim for relief on this basis alone.

### 3.      EA Is Entitled To Enforce DT's Assignment Of Any Copyright Interest In The PlumbBob Drive

Even if DT could somehow establish that it was a co-author of the PlumbBob Drive (which it cannot), EA would *still* be entitled to summary adjudication of DT's

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

11

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

1   first claim for relief based upon DT's express assignment of any copyright interest.

2   "Copyrights, like any other property right, can be transferred by any means of

3   conveyance." *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156

4   (9th Cir. 2010) (citing 17 U.S.C. § 201(d)(1)).  "A simple written note or

5   memorandum of transfer" signed by the author will suffice.  *Id.*

6         The Confidentiality and Anti-Piracy Agreements executed by DT state in

7   relevant part:

8         *Assignment*.  Contractor [DT] hereby assigns and agrees to assign all

9         rights in the Work to the Company [Lithomania].  At the Company's or

10        EA's request, Contractor will assist and cooperate with the Company

11        and EA in all respects, will execute documents, and (at Company's or

12        EA's expense and subject to Contractor's reasonable availability) will

13        give testimony and take further acts requested to acquire, perfect,

14        transfer, maintain and enforce copyright, trademark and other legal

15        protection for the Work, including without limitation filing of a copy of

16        this Agreement with the appropriate government agency.  Contractor

17        hereby appoints Company and the Secretary of EA as my attorneys-in-

18        fact to execute documents on behalf of Contractor for this purpose.

19   Long Decl., Ex. B (¶ 1) & Ex. C (¶ 1).  The "Work" is defined as "USB Drives in

20   the shape of THE SIMS PLUMBOB trademark."  *Id.*  Thus, the Confidentiality and

21   Anti-Piracy Agreements effected a complete assignment of any copyright interest

22   that DT might have possessed in the PlumbBob Drive.  *See* 17 U.S.C. § 204(a).

23         Moreover, it is undisputed that EA is an intended third-party beneficiary of

24   the Confidentiality and Anti-Piracy Agreements.  *See* Klieger Decl., Ex. A (Jones

25   Tr. 269:8-14; 279:9-20).  This is confirmed by the Confidentiality and Anti-Piracy

26   Agreements themselves, which state:

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

12

> *Third Party Beneficiary*.  Contractor [DT] understands that EA is a
> third party beneficiary of this agreement, and has full right to bring any
> action against Contractor, including injunctive action, to enforce its
> terms.

Long Decl., Ex. B (¶ 5); *see id.*, Ex. C (¶ 5); *Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.*, 160 Cal. App. 2d 290, 297 (1958) ("The test for determining whether a contract was made for the benefit a third person is whether an intent to benefit a third person appears from the terms of the contract.").

DT has argued that it executed both the Vendor Agreement and the Confidentiality and Anti-Piracy Agreements in reliance upon false representations by Lithomania, and that the agreements are therefore unenforceable.  Under California law, however, an intended beneficiary's right to enforce a contract "continues until the contract has been rescinded *in compliance with the rescission statute*."  *Spinks v. Equity Res. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1024-25 (2009) (emphasis added).  "If rescission has not occurred according to the statutory procedures, but the contract is instead terminated for some other reason, a third-party beneficiary may still enforce the agreement."  *Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1486 (1998).

DT concedes that the agreements have not been terminated at all, Klieger Decl., Ex. A (Jones Tr. 274:14-275:4, 277:5-9), much less rescinded according to the statutory procedures.  To effect a rescission under the California Civil Code, a party to a contract must, *inter alia*, "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise."  Cal. Civ. Code § 1691.  DT has never returned or offered to return the monies that it received from Lithomania.  Klieger Decl., Ex. A (Jones Tr. 334:15-24) ("Q. … Did Direct Technologies ever return to Lithomania any of the money that Lithomania paid to Direct Technologies in connection with the PlumbBob USB project?  A. Did we return money to her?  Q.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2
13
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

1  Correct.  A. No.  Q. Did Direct Technologies ever offer to return any money to

2  Lithomania?  A. No.").  Consequently, neither the Vendor Agreement nor the

3  Confidentiality and Anti-Piracy Agreements have been rescinded as a matter of law.

4  *See Principal Mut. Life Ins.*, 65 Cal. App. 4th 1487.

5      Moreover, even if DT and Lithomania had intended to rescind the Vendor

6  Agreement and Confidentiality and Anti-Piracy Agreements (which they did not),

7  and even if the statutory procedures had been followed (which they were not), EA

8  would *still* be entitled to enforce those agreements.  Under controlling California

9  law, "[c]ontracting parties may not rescind or revoke the contract where the

10 'beneficiary has accepted the benefit or has detrimentally acted in reliance

11 thereon.'"  *Spinks*, 171 Cal. App. 4th at 1025 (quoting *Griffin v. Williamson*, 137

12 Cal. App. 2d 308, 317 (1955)).  DT concedes that it did not intend for its settlement

13 with Lithomania to affect in any way EA's rights under the agreements.  Klieger

14 Decl., Ex. A (Jones Tr. 280:21-281:8) (Q. … At the time you executed the

15 settlement agreement and release on behalf of Direct Technologies, LLC, were you

16 intending for that settlement agreement and release to modify, terminate, cancel, or

17 in any way affect the rights of Electronic Arts under the vendor agreement or the

18 confidentiality agreement?  A. … [T]he settlement between DT and -- Lithomania

19 was between those two parties, and I don't think I or Lithomania could affect

20 someone else in our settlement.").  And there is nothing in the Settlement

21 Agreement and Release that could have effected a termination or  rescission of those

22 agreements.  Long Decl. ¶ 10 & Ex. D.

23      Nor could EA's rights have been affected.  DT formed its purported belief

24 that it was a co-author of the PlumbBob Drives in the summer of 2008.  *Id.* (Jones

25 Tr. 51:15-52:6, 191:3-21, 259:21-260:2, 261:21-262:15).  Yet, DT did not disclose

26 that belief to anyone until it filed this action in September 2010, nearly two years

27 later.  Hopkins Decl. ¶ 6; Long Decl. ¶11; Klieger Decl., Ex. A (Jones Tr. 52:8-15,

28 261:21-262:15, 262:25-263:22).  Had DT timely disclosed its purported belief, EA

168649.2

14

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  would not have approved the PlumbBob Drives for manufacture, and would not

2  have distributed them as part of *The Sims 3* Collector's Edition, without first

3  obtaining a declaration that DT held no copyright interest in the drives or otherwise

4  resolving the claim to its satisfaction.  Hopkins Decl. ¶ 6.  Because EA acted in

5  reliance on the DT's contractual undertakings, EA is entitled to enforce the

6  agreements irrespective of any attempted rescission.  *See Principal Mut. Life Ins.*, 65

7  Cal. App. 4th at 1487 n.9.

8       For each of the foregoing reasons, EA is entitled to summary adjudication of

9  DT's first claim for relief.  EA will file a motion to recover its attorneys' fees and

10 costs pursuant to 17 U.S.C. § 505.

11     **B.**    **EA Is Entitled To Summary Adjudication Of DT's Second Claim**

12            **For Relief, For An Accounting**

13      DT's second claim for relief, for an accounting, is based upon the right of a

14 joint copyright owner to an equal share of profits from a copyrighted work, and

15 therefore "necessarily rest[s] upon plaintiff having met the antecedent showing that

16 it has ownership rights under the Copyright Act."  *Cambridge Literary Props., Ltd.*

17 *v. W. Goebel Porzellanfabrik G.m.b.H.*, 510 F.3d 77, 80-81 (1st Cir. 2007).  DT's

18 inability to establish itself as an owner of any copyright interest in the PlumbBob

19 Drive is therefore fatal to its accounting claim, and EA is entitled to judgment as a

20 matter of law on DT's second claim for relief.

21     **C.**    **EA Is Entitled To Summary Adjudication Of DT's Third Claim**

22            **For Relief, For Alleged Trade Secret Misappropriation**

23      DT's third and final claim for relief is for alleged trade secret

24 misappropriation under the California Uniform Trade Secrets Act, Cal. Civ. Code §

25 3426.1, *et seq.*  DT has identified as its purported trade secrets its computer-aided

26 design (CAD) files and prototype samples of the PlumbBob Drive.  Klieger Decl.,

27 Ex. A (Jones Tr. 29:6-19).  DT concedes that only the samples, and not the CAD

28 files, were provided to EA.  *Id.* (Jones Tr. 29:20-24).  DT contends that EA

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

15

1  "misappropriated" the samples, however, because EA allegedly acquired them "by

2  improper means of misrepresentation and fraudulent conduct" and subsequently

3  disclosed the samples to Trek 2000 "without DT's consent or license."  SAC ¶ 40.

4  DT's trade secret misappropriation claim fails for at least five independent reasons:

5       *First*, the PlumbBob Drive samples were not trade secrets at all.  Setting aside

6  the fact that the samples were simply three-dimensional embodiments of EA's

7  famous PlumbBob icon, the samples had no usefulness to DT beyond this single

8  project.  Under California law, a trade secret "is not simply information as to single

9  or ephemeral events in the conduct of [a] business"; rather, [a] trade secret is a

10 process or device for continuous use in the operation of the business."  *Cal*

11 *Francisco Inv. Corp. v. Vrionis*, 14 Cal. App. 3d 318, 322 (1971); *see also Walker v.*

12 *University Books, Inc.*, 602 F.2d 859, 865 & n.2 (9th Cir. 1979); *Clark v. Bunker*,

13 453 F.2d 1006, 1009 (9th Cir. 1972).  The PlumbBob Drive samples were not

14 intended for continuous use in the operation of DT's business and thus, even if those

15 samples had been both highly original and maintained in secret, they would not

16 qualify for trade secret protection.

17      *Second*, DT did not undertake adequate efforts to maintain the secrecy of its

18 purported trade secrets.  *See* Cal. Civ. Code § 3426.1 (trade secret must be "the

19 subject of efforts that are reasonable under the circumstances to maintain its

20 secrecy").  A party claiming trade secret protection must show more than a mere

21 "intention" to keep information secret; it must "demonstrate that it manifested its

22 intention by making some effort to keep the information secret," such as by

23 disclosing the information only pursuant to a strict non-disclosure agreement

24 ("NDA").  *VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1049-50

25 (N.D. Cal. 2006).  DT did not make any effort to maintain the secrecy of the

26 PlumbBob Drive samples. DT did not ask either Lithomania or EA to sign an NDA.

27 Klieger Decl., Ex. A (Jones Tr. 167:21-168:7).  It did not require its own employees

28 to sign an NDA.  *Id.* (Jones Tr. 168:12-16).  And it did not ask any of the numerous

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

16

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

third parties to which it provided the samples and related CAD files to sign NDAs. *Id.* (Jones Tr. 168:17-169:7, 171:9-24, 186:5-20, 188:3-11). Simply put, DT did not manifest any intent to maintain the secrecy of its purported trade secrets.

*Third*, to the extent the PlumbBob Drive samples could otherwise qualify for trade secret protection, DT expressly agreed in the Vendor Agreement that any and all intellectual property rights in the PlumbBob and derivative works thereof, *including trade secrets*, were owned by EA. Long Decl., Ex. A (¶ 2.1). As discussed above, the Vendor Agreement was never rescinded; and, even if it had been rescinded, EA would remain entitled to enforce those terms that inured to its benefit. In other words, to the extent the PlumbBob Drive samples somehow constitute or embody trade secrets, those trade secrets are owned by EA, not DT.

*Fourth*, regardless of the enforceability of the Vendor Agreement, EA cannot be liable for trade secret misappropriation based upon its acquisition, disclosure, or use of an object in which, by DT's own admission, EA owns at least a one-half copyright interest. SAC ¶¶ 32-34; Klieger Decl., Ex. A (Jones Tr. 31:11-14, 190:12-191:21). It is hornbook law that each joint owner of a copyrighted work "has the right to use or to license the work as he or she wishes." *Thomson*, 147 F.3d at 199. Thus, even if DT were correct that EA is only a co-author of the PlumbBob Drives, that alone immunizes EA from liability for trade secret misappropriation.

*Finally*, DT simply has no evidence that EA acquired the PlumbBob Drive samples "by improper means of misrepresentation and fraudulent conduct," or that it subsequently disclosed the samples to Trek 2000. SAC ¶ 40. DT admits that it had no interactions at all with EA during the course of the PlumbBob Drive project. Klieger Decl., Ex. A (Jones Tr. 46:9-16). Moreover, even if Lithomania's allegedly false representations were somehow chargeable to EA (and DT offers no reason they would be), DT concedes that Lithomania made those representations only *after* DT had sent the samples to Lithomania for forwarding to EA. *Id.* (Jones Tr. 187:5-188:21, 221:10-222:3). And there is no evidence whatsoever that EA had any

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

17

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION

1   contact with, let alone sent the PlumbBob Drive samples, to Trek 2000.  In other

2   words, even if the samples were entitled to trade secret protection (which they were

3   not), and even if they were owned exclusively by DT (which DT concedes they

4   were not), there would still be no factual basis for DT's trade secret

5   misappropriation claim against EA.

6        For each of the foregoing reasons, EA is entitled to judgment as a matter of

7   law on DT's claim for alleged trade secret misappropriation.  Because DT had no

8   good faith basis for asserting its misappropriation claim in the first instance, EA will

9   file a motion to recover it attorneys' fees and costs pursuant to section 3426.4 of the

10  California Civil Code.

11  **V.    CONCLUSION**

12       For all of the foregoing reasons, EA respectfully requests that the Court grant

13  its motion for summary judgment or, in the alternative, summary adjudication and

14  enter judgment in its favor on each and every one of DT's claims for relief.  As

15  discussed above, EA will file a motion to recover its substantial attorneys' fees and

16  costs pursuant to the Copyright Act, 17 U.S.C. § 505, and the California Uniform

17  Trade Secrets Act, Cal. Civ. Code § 3426.4.

18  Dated:  January 27, 2014                KENDALL BRILL & KLIEGER LLP

19

20                                          By: /s/ Robert N. Klieger

21                                              Robert N. Klieger
                                                Attorneys for Defendant and
22                                              Counterclaimant Electronic Arts Inc.

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

168649.2

18

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION